Abraham Olshine v. Commissioner.
Olshine v. Commissioner
Docket No. 9319.
United States Tax Court
1949 Tax Ct. Memo LEXIS 178; 8 T.C.M. (CCH) 497; T.C.M. (RIA) 49120; May 20, 1949
*178 L. A. Luce, Esq., and Albert B. Maloney, C.P.A., 410 Warner Bldg., Nashville, Tenn., for the petitioner. Frank M. Thompson, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $10,428.14 in income tax for the fiscal year ended July 31, 1942, against the petitioner. The issues for decision are whether the Commissioner erred (1) through including as income of the petitioner the 45 per cent of the income of Banks and Olshine's Stores which, under a partnership agreement, would be distributable to his three daughters; (2) in spreading the cost of improvements to leased premises over the life of the building instead of over the shorter life of the lease; and (3) in disallowing expense deductions for certain expenditures. Findings of Fact The petitioner is an individual who resides in Nashville, Tennessee. He was engaged in the mercantile business during the first part of 1941 as a sole proprietor. He owned and operated five stores located in Nashville, Chattanooga, Louisville, Evansville and Atlanta. The store in Nashville was operated under the name of Banks. The others were operated under the *179 name of Olshine's. The stores sold ladies' and men's ready-to-wear garments at retail. The petitioner had three daughters, Mildred, Estelle, and Luas. Mildred, who was 29 in 1941, had married I. O. Kuniansky in 1937. Kuniansky changed his name to Kunian in 1941. Estelle, who was 24 in 1941, had married Robert Stein in 1936. Luas was 17 years of age in 1941 and unmarried. Kunian had worked with the petitioner in the business since about 1936. He had charge of the men's ready-to-wear branch in 1941, including buying and selling. Stein had worked with the petitioner in the business since about 1937 and had charge of the ladies' ready-to-wear branch in 1941, including buying and selling. The management of the five stores was divided between Kunian and Stein under the general supervision of the petitioner in 1941. Mildred had worked regularly in the business for two years prior to her marriage handling principally office work but also helping some on the floor. Mildred and Estelle, after their marriages, helped at the store in Nashville regularly at busy times such as before Easter, before Christmas, on Saturdays, and at times when sales were being conducted. Luas did not participate *180 in the business of the corporation at any time material hereto. The petitioner desired to create an estate for his daughters, and since the only property which he had was his business, he decided to give each daughter a 15 per cent interest in that business and to form a partnership with them. He wanted them to become familiar with his business. There was a possibility in August 1941 that Kunian and Stein would soon enter the Armed Forces of the United States, and after the taxable year here in question they did join those forces. The petitioner felt that the interests given to his two daughters would be an incentive to Kunian and Stein to put forth their best efforts for the success of the business. He discussed these matters fully with his three daughters, Kunian, and Stein, and he also stated that if the business prospered he would later give an interest therein to Kunian and Stein. The petitioner and his three daughters entered into a partnership agreement on August 1, 1941. It recited that he had that day transferred to each daughter a 15 per cent interest in the Banks and Olshine's Stores and those stores had been transferred to the partnership. It provided that the petitioner *181 should have a 55 per cent interest and each of his three daughters a 15 per cent interest in the assets, and each should share the gains and losses of the business in those same percentages. Books were to be kept showing the interest of each partner. The interest of any retiring partner could be purchased at book value by the other partners. It also provided as follows: "No note shall be signed, no lease shall be executed, and no other paper pledging the credit and assets of the partnership shall be signed except by one or more partners holding a majority interest in the partnership. All questions of policy and management of the business and any differences that may arise shall be determined by the partner or partners holding a majority interest in the partnership business and his or their decision on all such matters shall be controlling." The petitioner filed a gift tax return reporting the three gifts. Third parties were notified of the existence of the partnership. Partnership books were opened containing a capital account and a drawing account for each of the partners. The business was operated during the taxable year in the same way as it had been operated previously, except *182 that Kunian and Stein took on some additional duties, and their wives, in addition to working in the stores as they had before, participated in the discussion of all important business matters which came up for decision during that year. The three daughters withdrew from the business for the taxable year only sufficient funds to pay their income taxes, but in a later year they withdrew larger amounts to buy property in their own names. A corporation was formed in 1946 and it took over the business. The petitioner and his three daughters were the original stockholders of the corporation. Kunian and Stein became officers of the corporation. The three daughters had property of their own on August 1, 1941 from which each received income annually in the amount of $8,333.33. The petitioner was married and living with his wife, Rose, at all times material hereto. He entered into a lease agreement with Rose on June 15, 1941 for the premises occupied by the Olshine's Store in Louisville, Kentucky. The lease was for a term of five years commencing on June 15, 1941, at an annual rental of $9,000. The petitioner, as lessee, had the right under the lease to make improvements at his own expense *183 which were to become a part of the leased premises. The lease contained no provision for renewal. The value of the property was $35,000. The Olshine's Store at Atlanta was remodeled during 1941. $436.57 was spent during the taxable year to improve the premises by moving the office fixtures from the rear of the first floor to a balcony in order to obtain additional selling space on the first floor and to obtain needed additional space for the office. $400.66 was spent during the taxable year to improve the premises by moving the office fixtures from the rear of the first floor to a balcony in the Louisville store in order to obtain additional selling space on the first floor and to obtain needed additional space for the office. An undisclosed amount was spent during the taxable year in connection with changes made in the display windows of the Nashville store. The Commissioner, in determining the deficiency, added $18,516.36 to the income of the petitioner and explained that the three daughters were not bona fide partners in the business conducted under the name of Banks and Olshine's Stores and, accordingly, the entire income from that source was taxable to the petitioner. *184 He added to the income as shown on the partnership return $3,757.50 made up of $2,656.28 characterized as "excessive amount deducted for amortization of improvements to leased properties disallowed" and $1,101.22 characterized as "capital expenditures for remodeling front of Nashville store and office of Atlanta store not allowable as a deduction from gross income." Opinion MURDOCK, Judge: The principal question is whether the three daughters, or any of them, may be recognized for income tax purposes as partners so that a part of the income of the business of Banks and Olshine's Stores is taxable to them rather than to the petitioner. The daughters acquired their interest in the partnership by gift from their father at the time of the formation of the partnership and under circumstances similar to those which were present in and . They did not contribute any new capital. The minor daughter, Luas, made no contributions of services and took no part in the operation of the business either before or after August 1, 1941. Only enough funds were withdrawn in her name from the partnership *185 earnings of the taxable year to pay income tax on her behalf on those earnings. This case, in so far as it relates to this minor daughter, is not distinguishable from the two cases cited and others following them in which it has been held that a father can not escape tax on income under such circumstances. The situation in regard to the other two daughters is somewhat different. They acquired their interest in the same way but there was real advantage to the business in having them as partners not only because they were familiar with the business and worked in the Nashville store themselves, but also because their husbands were employed as the two chief executive officers under the petitioner, and this transfer of interests to their wives was an inducement to them to put forth their best efforts for the success of the business. Furthermore, although the petitioner retained a controlling interest, it appears that these two daughters were consulted on all matters of policy of the business after August 1, 1941. The evidence as a whole discloses an intention, upon the part of the petitioner and these two daughters, to form a real partnership in which the daughters would participate fully *186 to the extent of their interests. The Commissioner erred in adding to the income of the petitioner as reported 30 per cent of the partnership income to which these two daughters were entitled under the partnership agreement. The petitioner says that the partnership deducted in this taxable year one-fifth of the cost of permanent improvements to the premises in Louisville occupied by the Olshine's Store under a five-year lease, whereas the Commissioner has disallowed a part of the deduction claimed on the ground that the cost of the improvements should be spread over the longer life of the building. The parties are not in disagreement as to any of the figures involved in the necessary computations under this issue. The respondent's argument is that the lessor was the wife of the petitioner and the mother of the three girls; the lease was extremely favorable to the lessor; the improvements were all out of the proportion if the lease was not to be extended beyond five years; and the occupancy was for an indefinite period because there was an understanding between the parties, express or implied, that the petitioner or the partnership could continue to occupy the leased premises after *187 the five-year period if that was desired. The only evidence on this question is the lease itself and a statement by the petitioner indicating that the value of the premises was $35,000. It might be helpful to know whether this was the first lease and whether the partnership intended to continue the Louisville store. The record as a whole does not justify a reversal of the Commissioner's determination and a holding that the amount of the improvements was recoverable through depreciation over the five-year term of the lease. Cf. ; , affirmed on other points , . The third and final issue is whether certain expenditures in connection with the Atlanta and Nashville stores represented ordinary and necessary expenses deductible from income of this year in their entirety or represented capital expenditures recoverable through depreciation. The expenditures in connection with moving the office in the Atlanta store were to improve that store by obtaining additional selling space on the first floor and obtaining needed *188 additional space for the office by moving it to larger quarters on the balcony or mezzanine floor. Such expenditures would be capital and not expense items. Cf. ; . The same would be true of an item proved for the Louisville store but not mentioned in the petitioner's brief. The evidence in regard to the expenditures for the Nashville store is too vague to justify a finding that any part thereof was an ordinary and necessary expense. Cf. . Decision will be entered under Rule 50.